## Commonwealth v. Lilley

438

C.P. of Fayette County, no. 87 of 1997.

*Jack Heneks, assistant district attorney,* for the Commonwealth.

*Kirk Sohonage,* for defendant.

SOLOMON, *J.,* November 9, 1998—Following a bench trial, the appellant, Bruce Allen Lilley, was found guilty of rape, 18 Pa.C.S. §3124; involuntary deviate sexual intercourse, 18 Pa.C.S. §3123; aggravated indecent assault, 18 Pa.C.S.§3126; statutory sexual assault, 18 Pa.C.S. §3122.1; and corruption of minors, 18 Pa.C.S. §6301. After hearing, at the time of sentence, the court found that the defendant was a sexually violent predator under Megan's Law, 42 Pa.C.S. §9793, and the defendant was sentenced to serve a period of incarceration of six years to life.

A motion for reconsideration of sentence was filed with this court and was denied. Thereafter, the appellant filed an appeal from the judgment of sentence to the Superior Court of Pennsylvania. This opinion is in support of the appellant's conviction.

## STATEMENT OF THE CASE

On November 16, 1996, Doris Lilley, the wife of the defendant, Bruce Lilley, discovered her 7-year-old daughter, Anita Miller, and the defendant in the bathroom. Anita was lying on her back on the bathroom floor with her pants and underpants down around her ankles, and the defendant, next to her also with his pants down, was

masturbating and ejaculating onto the bathroom carpet. (N.T., pp. 26-28.) The defendant admitted to his wife that it had happened several times before. (N.T., p. 29.)

The defendant then admitted himself to the hospital and on November 20, 1996, Troopers Jeffrey P. Cermak and Shawn Jones of the Pennsylvania State Police went to Lakewood Psychiatric Hospital to speak with the defendant. (N.T., pp. 40-42.) As Trooper Cermak introduced himself to the defendant, the defendant stated that "what I did was wrong" and claimed that it was "the first time I ever did this." (N.T., pp. 42-43.) Trooper Cermak then advised the defendant of his *Miranda* rights, and the defendant knowingly and voluntarily waived his rights. (N.T., pp. 43-45.) The defendant then admitted that he had sexually assaulted the victim "more than 20 times," and that he had "penetrate[d] her butt more than three times." (N.T., pp. 49, 66-68.) He also admitted that the penetration was with his penis. (N.T., pp. 67-68.) He also told the troopers that when he had been caught with the victim, he had "rubbed her down" with lotion and he "was going up and down on her leg." (N.T., p. 47.) The defendant said that sometimes he would use the lotion "to massage the child and to rub it on her and have her rub it on him," that he would "rub his penis on her butt and on her thigh," and that sometimes it may have slipped into her anus. (N.T., pp. 47, 65-68.) At a later time, after being *Mirandized* and again waiving his rights, the defendant repeated his admissions to Cermak.

On December 2, 1996, the defendant was interviewed by Janie Garlick Orndorff of Fayette County Children and Youth Services while he was being held in Fayette County Prison. (N.T., p. 82.) Orndorff advised the defendant of the *Miranda* warnings, which he waived by signing the appropriate form (N.T., pp. 82-85), and she gave him oral notification of the investigation she was

conducting which the defendant acknowledged by signing a form. (N.T., pp. 86-87.) The defendant once again admitted that he had touched the victim "in her private area" and that he had put his "pee pee in her butt." (N.T., p. 89.)

At trial, the victim testified that the defendant "pushed up and down on my private with his," and that the defendant had put lotion on her privates and her "bottom." (N.T., pp. 8, 11.) According to the child, these acts had occurred on occasions while she was in kindergarten and in the first grade. (N.T., pp. 9-10.) She further testified that the incidents had taken place in the bathroom and in her bedroom, sometimes while her mother was in the house and other times when she was outside the house. (N.T., pp. 9, 19.) The child also confirmed the final incident of abuse when her mother caught him in the bathroom with her. (N.T., pp. 15-16, 19-21.)

Moreover, the testimony of Dr. Mary Carrasco, a defense witness, strongly supported the allegations of sexual abuse. On cross-examination, Dr. Carrasco testified as to the victim's clear and credible disclosure of anal penetration, vaginal penetration, and of ejaculation. (N.T., p. 106.) Dr. Carrasco also testified that the victim's affect was consistent with the incident she was describing. (N.T., p. 106.)

Upon this evidence, the court found the defendant guilty of rape, involuntary deviate sexual intercourse, aggravated indecent assault, statutory sexual assault, and corruption of minors. On appeal, the appellant raises a variety of issues, including numerous state and federal constitutional questions concerning Pennsylvania's Megan's Law and the assessment process under this law. By virtue of the Pennsylvania Superior Court opinion rendered in *Commonwealth v. Hayle,* 719 A.2d 763 (Pa. Super. 1998), we will not address the constitutional ques-

tions raised by the appellant. We would only comment that after *Hayle* was decided, the Superior Court handed down an opinion in *Commonwealth v. Koller,* 719 A.2d 1069 (Pa. Super. 1998) which disagreed with *Hayle* but was bound by it. Further, at the time of this opinion, the Megan's Law issue is pending before our Supreme Court. However, we will address the appellant's contention that the trial court erred in admitting the appellant's statement since: (a) the Commonwealth failed to establish the body of the crime; (b) the Commonwealth, through children and youth service workers, interviewed the appellant without his attorney present, knowing that he had an attorney and used such information against him; and (c) the Commonwealth used certain statements against the appellant that he had made while on medication.

## DISCUSSION

Initially, we will address the appellant's argument that the Commonwealth failed to prove corpus delicti, or the body of the crime, apparently contending that there was no independent evidence to establish a crime other than his statements. This argument is without merit.

The well-established corpus delicti rule is an evidentiary rule of admissibility. It provides that "a criminal conviction may not stand merely on the out-of-court confession of one accused, and thus a case may not go to the fact-finder where independent evidence does not suggest that a crime has occurred. *Commonwealth v. Edwards,* 521 Pa. 134, 144, 555 A.2d 818, 823 (1989)." *Commonwealth v. Buck,* 426 Pa. Super. 26, 28-29, 626 A.2d 176, 177 (1993). This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements. *Commonwealth v. Turza,* 340 Pa. 128, 134, 16 A.2d 401, 404 (1940); *Commonwealth*

*v. Forman,* 404 Pa. Super. 376, 380, 590 A.2d 1282, 1284 (1991).

The corpus delicti rule consists of two elements: the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. *Commonwealth v. Ware,* 459 Pa. 334, 365, 329 A.2d 258, 274 (1974); *Commonwealth v. Hogans,* 400 Pa. Super. 606, 609, 584 A.2d 347, 349 (1990). The identity of the party responsible for the act is not part of the corpus delicti. *Commonwealth v. Tessel,* 347 Pa. Super. 37, 43, 500 A.2d 144, 147 (1985).

As the *Hogans* court stated: " '[p]roof that the accused was the perpetrator of the crime is not required.' . . . The crucial determination in applying the corpus delicti rule is whether, at the close of the case, the proof of the corpus delicti was sufficient to permit the fact-finder to consider defendant's admission or confession. [citations omitted]" *Commonwealth v. Hogans, supra,* 400 Pa. Super at 609, 584 A.2d at 349.

"Before introducing an extra-judicial admission, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt." *Commonwealth v. Edwards, supra,* 521 Pa. Super at 144, 555 A.2d at 823; *Commonwealth v. Forman, supra,* 404 Pa. Super. at 381, 590 A.2d at 1285. Rather, it is enough for the Commonwealth to prove beyond a reasonable doubt that the injury or loss is consistent with the crime having been committed. *Commonwealth v. Hogans, supra,* 400 Pa. Super. at 610, 584 A.2d at 350. Furthermore, it is axiomatic that corpus delicti may be proved by circumstantial evidence. *Commonwealth v. Forman, supra,* 404 Pa. Super. at 382, 590 A.2d at 1285.

In the present case, there was a wealth of independent evidence, other than appellant's statements, to prove a crime was committed. The Commonwealth presented the

testimony of the victim with respect to the various charges of sexual abuse, including evidence of penetration, occurring while she was 6 and 7 years old. The victim provided convincing evidence that the defendant engaged in sexual intercourse with her that was deviate. There was also the testimony of the victim's mother and Dr. Mary Carrasco which corroborated the child's testimony, and that the defendant was at least 30 years of age at the time, thereby establishing the crimes of rape, involuntary deviate sexual intercourse, and statutory sexual assault. Further, the victim's testimony established that the defendant had indecent contact with her when she was well below 13 years of age, and that the defendant had committed a multitude of corrupting acts against her, thus satisfying the elements of both aggravated indecent assault and corruption of minors. Furthermore, the mother's eyewitness testimony verified the crime of corruption of minors and, at a minimum, provides a strong inference of aggravated indecent assault. Thus, the appellant was not convicted solely on the basis of his statements.

We next turn to the appellant's claim that the Commonwealth, through children and youth service workers, interviewed the appellant without his attorney present, knowing that he had an attorney, and used this information against him. Initially, we would note that there is nothing in the record to indicate that, at the time of the interview, the appellant was represented by counsel or had even requested counsel.

In the case of *Commonwealth v. Ramos,* 367 Pa. Super. 84, 532 A.2d 465 (1987), the Superior Court affirmed the trial court's order granting the defendant's motion to suppress statements made to a children and youth services caseworker while he was in custody. The reasoning was that the caseworker failed to administer *Miranda*

warnings to the defendant prior to their discussion, that the defendant had specifically requested counsel on two earlier occasions, and that he also mistakenly believed his conversation with the caseworker would be kept confidential. *Id.,* 367 Pa. Super. at 87, 532 A.2d at 466-67.

Instantly, unlike *Ramos,* the caseworker carefully explained the appellant's *Miranda* rights to him, including his right to have counsel present during the discussion, and he signed a waiver of those rights. At that time, the appellant was not represented by counsel and did not request counsel. Further, the caseworker made it clear to the appellant that the conversation was not confidential and would be used against him, thereby eliminating any misunderstanding in that respect. (N.T., pp. 84-85.) Thus, appellant was properly *Mirandized* and made a knowing and voluntary waiver. Hence, the Commonwealth was entitled to use the defendant's statements to the caseworker against him.

The appellant's last issue is that the Commonwealth used certain statements against him that he had made while under medication. We presume that the appellant's argument goes to the voluntariness of the statements he made to the police while at Lakewood Psychiatric Hospital. We would also note that there is no evidence in the record that the appellant was under any medication at that time. We also keep in mind that his hospital stay was voluntary.

"The test for determining voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession." *Commonwealth v. Jones,* 546 Pa. 161, 178, 683 A.2d 1181, 1189 (1996), citing *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993). With respect to the appellant's rights, we

note that "*Miranda* warnings are required only where there is custodial interrogation." *Jones,* 546 Pa. at 176, 683 A.2d at 1188, citing *Commonwealth v. Williams,* 539 Pa. 61, 650 A.2d 420 (1994). Although the appellant was not in custody when he was interviewed at Lakewood, nonetheless he was given his *Miranda* warnings, and made a knowing and voluntary waiver of his rights. Hence, this argument is without merit.

WHEREFORE, for the foregoing reasons, the court urges that the appeal on these matters be denied.