J-S34020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM MATTHEW BENNETT | : | |
| | : | |
| Appellant | : | No. 880 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 7, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000746-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: FEBRUARY 17, 2022**

William Matthew Bennett appeals the judgment of sentence following his convictions for Maximum Speed Limits and Driving Under the Influence of Alcohol or Controlled Substance - Marijuana ("DUI").[1] He challenges the denial of his motion to suppress and the sufficiency of the evidence. We affirm.

On January 12, 2020, Pennsylvania State Trooper Matthew Hartung arrested Bennett for the above charges. At Bennett's preliminary hearing, Bennett argued that he was not impaired and that the *corpus delicti* rule prevented any of his statements coming into evidence because the Commonwealth failed to "show that a crime was committed," specifically the

---

[1] 75 Pa. C.S.A. §§ 3362(a)(3) and 3802(d)(2), respectively.

crime of DUI. N.T., Preliminary Hearing, 06/11/20, at 34, 35. The court rejected his argument and bound him over for trial.

Bennett then moved to suppress his statements and any evidence taken from the vehicle, arguing that Trooper Hartung did not *Mirandize* him.[2] At the motion hearing, the Commonwealth and Bennett agreed to enter the preliminary hearing transcript as evidence. The following evidence was presented at the preliminary hearing.

Trooper Hartung testified that he is trained in field sobriety tests ("FSTs") and in the Advanced Roadside Impairment Detection Enforcement ("ARIDE"), "which is more focused on drug DUIs than alcohol DUIs." *Id.* at 9. He also testified that he had made hundreds of DUI arrests, "[p]robably half" of which were "drug-related DUI arrests." *Id.*

Trooper Hartung testified that on January 12, 2020, he observed Bennett driving at 71 mph in a 45-mph zone and proceeded to initiate a traffic stop. *Id.* at 4-5. Bennett complied and pulled his vehicle over. When Trooper Hartung approached Bennett's vehicle, he observed Bennett in the driver's seat and four other people in the vehicle. *Id.* at 5. Trooper Hartung immediately smelled a strong odor of burnt marijuana coming from the vehicle. *Id.* He observed "that [Bennett] had symptoms of someone who recently smoked marijuana based on his bloodshot eyes, dilated pupils." *Id.*

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Trooper Hartung asked all four occupants of the vehicle for identification and went to his patrol car where he radioed for back up.

He then returned to Bennett's vehicle, and without handing any of the identification cards back, asked Bennett to get out of the car and walked him to the rear of Bennett's vehicle. *Id.* at 6, 21, 23. Trooper Hartung told Bennett that he could smell marijuana coming from the vehicle and asked him if there was any marijuana in the car. Bennett replied, "[N]ot that [I'm] aware of." *Id.* at 25. Trooper Hartung then asked Bennett "if he had smoked marijuana," and Bennett responded that "he had smoked marijuana approximately three hours earlier." *Id.* at 7, 26.

Trooper Hartung testified that he then asked Bennett to perform four FSTs. *Id.* at 7. Trooper Hartung said Bennett performed one – the horizontal gaze nystagmus and vertical gaze nystagmus test – without signs of intoxication. *Id.* at 8. However, three others produced signs that Bennett was intoxicated. During the lack of convergence test, which tests the ability to cross one's eyes, he observed that Bennett's eyes did not cross. The trooper testified this is "a common indicator for marijuana usage." *Id.* at 10. For the Romberg balance test, Bennett "estimated the passage of 30 seconds in 24 seconds." *Id.* According to Trooper Hartung, in performing the test, if the participant is not within a "5-second threshold above or below 30 seconds, it can be an indicator of impairment also." *Id.* During the walk and turn test, Bennett "missed heel to toe on step four[,]" "stepped off the line on step five and missed heel to toe again[,]" "did not turn as instructed[,]" and "missed

heel to toe on step seven." *Id.* During the one leg stand test, "[Bennett] didn't exhibit enough clues to conclude that he was impaired based on that test." *Id.* at 12.

Trooper Hartung also observed that Bennett "had an odor of marijuana coming about his person" and had eyelid and body tremors. *Id.* at 12, 25. He testified that body tremors are an indicator of marijuana usage. *Id.* at 25. However, the trooper conceded the weather was cold. *Id.*

After the FSTs, Trooper Hartung arrested Bennett for DUI. *Id.* at 13. Trooper Hartung also testified that one of the occupants of the vehicle said that "they were smoking while they were driving" but "[s]he didn't clarify which persons out of the five of them were or were not smoking." *Id.* at 14, 33.

Following briefing, the trial court denied suppression. After a stipulated bench trial, and following sentencing, Bennett instituted this timely appeal.

Bennett raises the following issues:

    I.    Did the trial court err in admitting into evidence incriminating statements made by [Bennett] at the time of his arrest where [Bennett] was not advised of his rights against self-incrimination under *Miranda* prior to custodial interrogation by the Pennsylvania State Police Trooper?

    II.    Did the Commonwealth fail to establish a *prima facie* case for Driving under the Influence of Controlled Substances where there was no evidence other than the inculpatory statements of [Bennett's] himself that he had consumed controlled substances prior to operating his vehicle?

Bennett's Br. at 3.

Bennett argues that the trial court erred by admitting incriminating statements he made without being given *Miranda* warnings. He alleges that he was under arrest at the time of the statements and was subjected to interrogation "designed to elicit a testimonial response." *Id.* He acknowledges that questions regarding a driver's license or car registration do not require a *Miranda* warning, but states that *Miranda* is required "once the trooper recognizes what he believes to be the smell of marijuana[.]" *Id.*

We review the admission of evidence for an abuse of discretion. *Commonwealth v. Radecki*, 180 A.3d 441, 451 (Pa.Super. 2018). An abuse of discretion is not a mere error of judgment, "but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (citation omitted). Pursuant to *Miranda*, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Miranda*, 384 U.S. at 478. When that privilege is violated, any statements given should be excluded from evidence. *Id.* at 479.

An individual is subjected to custody for purposes of *Miranda* if the individual's "freedom of action" is "physically denied . . . in any significant way," or a reasonable person in the same situation would reasonably believe that the individual's "freedom of action or movement is restricted by the

interrogation." **Commonwealth v. Cooley**, 118 A.3d 370, 376 (Pa. 2015) (cleaned up). Courts must look at the totality of the circumstances when considering whether an encounter was custodial. **Id.** Factors relevant to determining if a person was in custody include: "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." **Commonwealth v. Witmayer**, 144 A.3d 939, 948 (Pa.Super. 2016).

Considering the evidence in its totality, the encounter between Trooper Hartung and Bennett did not rise to the level of custody. **Miranda** warnings were therefore not necessary. Trooper Hartung asked Bennett to get out of his vehicle based on the smell of burnt marijuana coming from the vehicle. He then asked Bennett walk to the back of Bennett's vehicle and explained that he smelled marijuana. Trooper Hartung then asked if there was marijuana in the vehicle and if Bennett had smoked marijuana.

No evidence here suggests that that Trooper Hartung restrained Bennett during this questioning or that he made a show of force or threatened to use force. Nor was there any evidence that he conducted the questioning in a forceful or threatening manner, or that he made Bennett get out of the vehicle and go to the back of his vehicle against his will. As for Bennett's argument that Trooper Hartung arrested him based on the smell of burnt marijuana alone, this claim lacks foundation in the record. **See Commonwealth v. Barr**,

No. 28 MAP 2021, 2021 WL 6136363, *15 (Pa. Dec. 29, 2021) (holding troopers lacked probable cause based solely on smell of burning marijuana, after enactment of Medical Marijuana Act). The evidence is clear that Trooper Hartung arrested Bennett after the trooper not only smelled burnt marijuana from the car and Bennett's person, but also observed Bennett's bloodshot eyes, heard Bennett's admission, and observed Bennett's performance on FSTs evidencing marijuana intoxication. The trial court did not abuse its discretion when admitting Bennett's statements.

Bennett also argues that the Commonwealth failed to meet its burden to support the DUI conviction. He argues that "[t]here was no evidence that [Bennett] was incapable of driving safely." Bennett's Br. at 23. He maintains that there were no issues with his driving except his speeding and he "performed well on almost all" the FSTs. *Id.* at 22. Bennett also claims that even if his statements are admissible, "the *corpus delicti* rule dictates that his statements alone are insufficient to prove an offense." *Id.* at 23.

The *corpus delicti* rule is both a limitation on the admission of the defendant's inculpatory statement and a rule limiting the reliance on the defendant's inculpatory statement to support a finding of guilt. **See Commonwealth v. Cuevas**, 61 A.3d 292, 295 (Pa.Super. 2013). We review the trial court's application of the rule for an abuse of discretion. **Commonwealth v. Dula**, 262 A.3d 609, 637 (Pa.Super. 2021).

Bennett's argument goes to the second prong of the rule – the requirement that the Commonwealth present sufficient evidence for the fact

finder to consider the defendant's statement in determining guilt. That prong of the rule provides that, in order for the fact finder to consider the defendant's inculpatory statement, the prosecution must prove beyond reasonable doubt that a crime has been committed. **See Cuevas**, 61 A.3d at 295.[3] This part of the rule thus requires the Commonwealth to present evidence that: "(1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency." **Dula**, 262 A.3d at 637 (cleaned up). Only if it has done so can it "rely upon statements and declarations of the accused to prove that the accused was, in fact, the criminal agent responsible for the loss." **Id.** (quoting **Commonwealth v. Taylor**, 831 A.2d 587, 590 (Pa. 2003) (internal quotation marks omitted)).

The statute at issue here – 75 Pa. C.S.A. § 3802(d)(2) – provides that an individual is guilty of DUI when the "individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate, or be in actual physical control of the movement of the vehicle." 75 Pa. C.S.A. § 3802(d)(2). As applied to this case, then, in order to establish the *corpus delicti,* the Commonwealth needed to show that someone operated a motor vehicle while under the influence of a drug or combination of drugs. **See Commonwealth v. Zelosko**, 686 A.2d 825, 826 (Pa.Super. 1996).

---

[3] **See also Commonwealth v. Bullock**, 170 A.3d 1109, 1118 (Pa.Super. 2017).

Here, Trooper Hartung testified that Bennett showed signs of impairment during portions of the FSTs; had bloodshot eyes; and smelled of burnt marijuana emanated from his person. The Commonwealth thus presented sufficient evidence for the fact finder to rely on Bennett's statements in finding him guilty. Bennett's further contention that there was no evidence to support a finding that he was incapable of driving safely also lacks merit. As to Bennett's contention that he passed some of the FSTs, this argument goes to the weight of the evidence, not the sufficiency. Bennett's *corpus delicti* and sufficiency argument is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/17/2022